FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

DEC 14 2015

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **FELTON EDWIN LEWIS, IV,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION** |
| ) | **NO. 1:15-cv-00831-RWS-JSA** |
| **INTERNATIONAL BUSINESS** ) | |
| **MACHINES CORPORATION,** ) | |
| **MICHAEL TOWNSEND, RENEE** ) | |
| **CUNNINGHAM, JOHN KOEPSEL,** ) | |
| **and DAVID SANDERS,** ) | |
| ) | |
| **Defendants.** ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS**
**OPPOSITION TO MOTION TO ENFORCE SETTLEMENT**
**AGREEMENT, TO DISMISS THIS ACTION WITH PREJUDICE**
**PURUANT TO FED. R. CIV. P. 12(b)(6), AND FOR SANCTIONS AGAINST**
**PLAINTIFF**

Felton Edwin Lewis, IV proffers this Memorandum of Law in support of his

opposition and states as follows:

**SUMMARY OF OPPOSITION**

1. Plaintiff Felton Edwin Lewis, IV ("Lewis") has no objections to settling the

   Title 7 action against Defendant International Business Machines Corporation

   ("IBM"); however, Mr. Lewis objects to a full release because of liability for

actions taken against him in retaliation and objects in good faith and only seeks to sign a settlement agreement against which actually resolves issues addressed at mediation.

2. The mediator and IBM's counsel, as well as attorney Mixon, made it clear prior to and throughout the mediation that the <u>only</u> issues to be addressed at mediation were IBM's discriminatory conduct, not retaliation, disparate treatment, or wrongful conduct.

3. Mr. Lewis would gladly and freely sign a settlement agreement today which releases IBM and its lawyers from liability in connections with IBM discriminatory conduct; however, pursuant to the mediator's explicit instructions because Mr. Lewis was not allowed to discuss IBM's lawyers' wrongful conduct, retaliations actions and wrongful conduct, outside of the Title 7 context, he should not be <u>forced</u> to sign the Settlement Agreement as drafted.

## BACKGROUND ON PLAINTIFF'S RELATIONSHIP WITH

## DEFFENDANT INTERNATIONAL BUSINESS MACHINES

## CORPORATION

4. Sterling Commerce (America) ("Sterling") is a subsidiary to Defendant IBM. Sterling was acquired by IBM in August of 2010.

5. Plaintiff was employed by Sterling since November of 1999 and was employed by IBM from October 1, 2010 until termination on March 13, 2013.

6. Plaintiff was approved by IBM on January 28, 2013 for a Skills of Growth and granted a Leave of Absence to accept employment with an IBM Business Partner.   The IBM Skills for Growth Agreement was executed by both the Plaintiff and IBM, and the Agreement stated that Mr. Lewis was approved for a leave of absence from IBM which would begin on February 8, 2013 and was planned to end on February 8, 2014. (Exhibit A – 20130128 Skills for Growth Agreement).

7. IBM retaliated against Mr. Lewis on February 8, 2013 after Mr. Lewis had entered into his approved leave of absence.  During a meeting on February 8, 2013, IBM HR Director, Renee Cunningham communicated that IBM was retracting and denying the Skills for Growth opportunity.

8. IBM communicated that if Mr. Lewis did not accept the IBM severance package agreement, then Mr. Lewis would be placed on a 30-day performance improvement plan.

9. IBM further retaliated against Mr. Lewis by assigning Mr. Lewis 30 days to obtain a quota of $350,000. IBM communicated to Mr. Lewis that he would be terminated if IBM did not receive $350,000 in executed Purchase Orders.

10. IBM further retaliated against Mr. Lewis during the 30-day performance review period, by canceling his American Express Corporate Travel Card. Mr. Lewis was the only member on the sales team in the Southeast that was placed on a 30-day performance review plan without a corporate card. In addition, Mr. Lewis was the only member of the sales team on the sales team in the Southeast that was required to pay for his own travel to clients.

11. IBM further retaliated against Mr. Lewis during the 30-day performance review period by removing him from the IBM Travel System. Mr. Lewis could not book travel similar to his IBM colleagues on the sales team in the Southeast.

12. IBM further retaliated against Mr. Lewis during the 30-day performance review period by placing Mr. Lewis under additional surveillance and reassigning his accounts to other sales reps.

13. Mr. Lewis filed the initial discrimination claim with the EEOC office in Atlanta against IBM in February 20, 2013.

14. IBM fired Mr. Lewis on March 13, 2013 prior to the investigation being started and completed by the EEOC.

15. Mr. Lewis was also deposed in an action against Sterling in the Eastern District of Tennessee titled *America's Collectible Network, Inc. v. Sterling Commerce (America), Inc.* ("Tennessee Action").

16. IBM provided counsel to represent Mr. Lewis in his capacity as a key witness. Georgia attorneys Joel D. Bush, II and Susan Cahoon of Kilpatrick Townsend & Stockton LLP ("Kilpatrick") were lead attorneys retained for the Mr. Lewis. The Representation Agreement was executed during April of 2013, one month after his termination. Kilpatrick lawyers represented Lewis and IBM jointly.

17. In addition, Mr. Lewis signed a consultation agreement in April 30, 2013 to utilize his knowledge and expertise to consult with Kilpatrick; however, Mr. Lewis has not been paid to date for services provided, even though he devoted substantial effect on behalf of IBM.

18. As additional retaliation, Defendant IBM and their counsel Jackson Lewis released Mr. Lewis's confidential EEOC charging documents prior to the EEOC completing their documentation. Significantly, Lewis was not allowed

to present any evidence regarding IBM's and Jackson Lewis' wrongful conduct in connection to leaking EEOC charging documents at the mediation.

19. Moreover, upon receipt of his confidential EEOC charging document, attorney Bush, in opposing a motion to reopen discovery in Tennessee Action published on the public docket Lewis' confidential EEOC charging documents and his confidential attorney-client communications with his retained counsel on the EEOC employment discrimination matter.    And in making public these confidential documents, Kilpatrick firm attacked credibility of their former client and sought to cross examine him at the reopened discovery, but the Tennessee court would not allow them to do so.  Moreover, Kilpatrick refused to consent to a motion seeking to have those materials filed under seal.

## **BACKGROUND ON MEDIATION PROCESS IN THIS MATTER**

20. Plaintiff Felton Edwin Lewis, IV terminated his representation agreement with Kilpatrick in October of 2013 and retained attorney Lee Parks to provide legal guidance on resolving the inherit conflict between the employee discrimination claim versus IBM, and serving as a key witness for IBM.

21. Attorney Parks was engaged by Mr. Lewis to provide legal guidance in connection with the Title 7 claim against IBM and how he should proceed in the Tennessee Action as a key witness.

22. Mr. Parks advised Plaintiff to resolve the employment discrimination matter before agreeing to voluntarily sitting for a deposition in the Tennessee Action with Kilpatrick as his lawyers.

23. IBM proposed mediation if the Mr. Lewis agrees to voluntarily sit for a deposition in the Tennessee Action with Kilpatrick as his lawyers.

24. The offer proposed by IBM to Mr. Lewis legal representation, attorney Greg Fidlon required Mr. Lewis to first agree to participate in a one-day preparation session with Kilpatrick ahead of his deposition in the Tennessee Action. Also, the IBM proposed agreement required the Plaintiff to resume the representation agreement and be deposed as an IBM witness. In exchange for agreeing to participate in the preparation session with Kilpatrick, and resuming the representation agreement with Kilpatrick, IBM would agree to schedule mediation, but only after the deposition was completed.

25. The offer proposed by IBM also stated that attorney Lee Parks could not be the mediator. Greg Fidlon representing Mr. Lewis accepted the IBM Proposal. (Exhibit B – 20131009 Acceptance of IBM Proposal to Mediate).

26. Mr. Lewis completed the proposed agreement by IBM and engaged in a one-day prep session with Kilpatrick and was deposed as an IBM witness in November of 2013.

27. Prior to the first mediation, Mr. Lewis canceled his IBM representation agreement with Kilpatrick for the second and final time.

28. The scope of the first mediation was strictly limited to merely EEOC discrimination issues. Mediator Terrence Croft excluded retaliation actions, disparate treatment, and wrongful conduct by IBM and attorneys Jackson Lewis and the potential breach of contract claims for IBM refusing to honor the Skills for Growth Agreement.

29. This matter was first mediated with IBM and their retained counsel, Jackson Lewis, and the Plaintiff's counsel, attorney Greg Fidlon, during December of 2013, and the midway through the mediation, the mediator Terrence Croft established a bracket of $200,000 to $400,000 range to resolve the employment discrimination claim. Mr. Lewis agreed to follow the mediator's guidance; however, Defendant did not agree to follow the mediator's guidance and thus an impasse was reached.

30. The scope of the first mediation was strictly limited to merely discrimination issues. Mediator Terrence Croft excluded retaliation actions by IBM and attorneys Jackson Lewis along with breach of contact claims.

31. After Mediation failed, Mr. Lewis retained counsel, Greg Fidlon, filed an amended discrimination charge against IBM in December of 2013.

32. The EEOC office in Atlanta completed their Investigation of the discrimination claim in June of 2014 and issued their determination finding cause against Defendant IBM.

33. The EEOC office in Atlanta scheduled a conciliation meeting at the EEOC office in July of 2014. Mr. Lewis attended the meeting, but IBM and their retained counsel were a no show.

34. After a first mediation failed with Terrence Croft, there was a second private negotiation during October of 2014 between the EEOC Investigator Trey Pyle and IBM's retained counsel Jackson Lewis.

35. Mr. Lewis and his legal representation were excluded from the private negotiation between IBM and the EEOC. Unfortunately, the private negotiation between IBM and the EEOC did not resolve the matter with an executed settlement. Additionally, IBM attempted to require a general release

that would absolve them of any liability relating to their retaliation actions, disparate treatment and wrongful conduct against Mr. Lewis.

36. The EEOC Investigator Trey Pyle presented IBM's final settlement offer agreement verbally over the phone in October of 2014 to Mr. Lewis. Mr. Lewis mentioned to Mr. Pyle that he could not accept any agreement without reviewing it with legal counsel and he would need time to retain an attorney.

37. Mr. Lewis wrote the EEOC after the second private mediation failed and requested a determination on the EEOC findings related to Retaliation. Also, Mr. Lewis filed the additional Retaliation claims versus IBM with the EEOC office in October of 2014, after learning that his new employer had discovered that he had filed an EEOC charge versus IBM. The EEOC office in Atlanta has yet to issue a determination on the Retaliation claims or respond to the amended Retaliation claims submitted by Mr. Lewis. (Exhibit C – 20150330 Response to EEOC – Amended Retaliation charges)

38. Mr. Lewis engaged attorney Rob Reid to assist in the review of the terms in the final settlement agreement. IBM consistently maintained to attorney Reid that Mr. Lewis had already agreed with the EEOC to provide a general release and had accepted the final settlement terms. (Exhibit D– 20150302 2nd Settlement Attempt – Documentation Rejecting General Release).

39. The EEOC issued the noticed of right to sue on December 24, 2014.

40. After the Right to Sue was issued, IBM and their retained counsel, Jackson and Lewis, maintained that Mr. Lewis had agreed to and accepted a general release. Lewis was adamant that he never accepted any EEOC or IBM offer and that he never agreed to a general release. Mr. Lewis contacted and met with the EEOC Director personally, and requested the EEOC setup a conference call with IBM, their retained counsel, and Mr. Lewis representation, attorney Reid.

41. Attorney Reid challenged the EEOC on why the Right to Sue was issued when the EEOC was aware the he was actively attempting to negotiate a final settlement with IBM. Mr. Reid requested the EEOC recall the Right to Sue, and the EEOC denied the request.

42. The EEOC Director scheduled a conference call with IBM and attorney Reid. During the call, Mr. Reid communicated to IBM that Mr. Lewis had never agreed a general release with the EEOC and that he never agreed to accept any of the IBM proposed settlement terms in their final agreement.

43. Attorney Reid withdrew from representing Mr. Lewis as he did not have the resource capacity to continue forward as a trial attorney, nor the resources to negotiate both the employment matter and the retaliation actions, disparate treatment, and wrongful conduct by IBM and their retained counsel.

44. Lewis filed the Title 7 Complaint in this Court during March of 2015. Subsequently the third mediation was scheduled.

## CURRENT MEDIATION

45. The third mediation in this case occurred on July 27, 2015.

46. Mr. Lewis never received or signed a copy of the mediation guidelines from his attorney Steve Mixon prior to the mediation.

47. In addition, Mr. Lewis was surprised to discover that his former attorney Lee Parks was the assigned mediator. Apparently, attorney Mixon and Defendant IBM agreed to have him mediate the matter considering his skill and ability in these areas of law combined with his familiarity with the facts of the case.

48. Mr. Lewis prepared and presented a planning document to attorney Mixon titled "How To Prepare Your Case For Mediation" on July 9, 2015 and highlighted the key discussion points. Attorney Mixon contacted the Mr. Lewis and communicated his legal guidance that the mediation planning document was not required or needed. (Exhibit E - 20150709 Lewis vs IBM - Prep Planning Outline for Mediation Prepared by Lewis for Mixon).

49. Attorney Mixon communicated to Mr. Lewis that scope of his representation was just the discrimination matter. Attorney Mixon mentioned the only issue

to be addressed by the representation agreement was Mr. Lewis' Title 7 claim, not the retaliation claims, wrongful conduct, disparate treatment, or breach of contract claims versus IBM.

50. Mr. Parks did not announce or disclose that he had been Lewis' former counsel.

51. Mr. Lewis acquiesced to the scope limitation and proceeded in good faith through the mediation process. During the mediation, Lewis was not allowed to submit any evidence regarding that fact that Jackson Lewis provided Kilpatrick firm with copies of his confidential EEOC charging. He was also not allowed to submit affidavits he had prepared in connection with the Tennessee Action and other matters outside of the scope of his Title 7 claims.

52. The parties came to a basic agreement and signed a simple Settlement Memorandum.

53. The Memorandum includes a mutual general release with exception of outside counsel retained by IBM to represent Mr. Lewis in the Tennessee Action. Lewis signed Memorandum at the end of a full day of mediation. Attorney did not explain the breadth of the mutual general release. It was Lewis understanding that any settlement in his Title 7 action against IBM would only include issues related to that Title 7 claim. This is especially so because IBM insisted prior to and throughout the mediation that Mr. Lewis could not

introduce any evidence regarding IBM's, Jackson Lewis' and Kilpatrick's wrongful conduct, retaliation actions and disparate treatment, in the Tennessee Action

54. Plaintiff's understanding was that the general mutual release did not apply to retaliatory actions by IBM since the scope of mediation excluded the retaliatory actions since the mediator Parks and IBM made it clear that the mediation would not deal with the claims of retaliation, disparate treatment, and wrongful conduct, including but not limited to Jackson Lewis' and Kilpatrick actions.

55. Plaintiff was shocked to discover that the proposed Settlement Agreement did not include a carve-out which would allow Mr. Lewis to sue IBM, Kilpatrick and Jackson Lewis firms in connection with their wrongful conduct, disparate treatment, and retaliation actions taken against him during and after his employment with IBM. He was also shocked to find that the draft settlement agreement included a general mutual release for IBM, Jackson Lewis and Kilpatrick even though the mediation was restricted to Mr. Lewis' Title 7 claims.

56. Paragraph 2 of the Settlement Memorandum states that the agreement shall be confidential, which is more than little ironic given that IBM and Jackson Lewis breached Lewis confidentiality by providing a copy of his EEOC charges to

Kilpatrick. It's even more galling given that Kilpatrick then published his confidential EEOC claim and attorney client privileged communication on the public docket in the Tennessee Action. Moreover, IBM is to give the Plaintiff a neutral reference.

57. Mr. Lewis presented his first and only review of markups and changes of the proposed Settlement Agreement to attorney Mixon. Mr. Mixon represented several issues with the proposed Settlement Agreement (Exhibit F – Issues raised by Attorney Mixon to Mediator Lee Parks) to Mr. Parks that included the carve-outs for Kilpatrick and Jackson Lewis firms to mediator Parks; however, Mr. Parks rejected the changes in his September 17, 2015 decision. Subsequently, attorney Mixon abandoned representation of Mr. Lewis.

58. Lee Parks has yet to respond to the concerns raised by Mr. Lewis, his former client, regarding his final decision (Exhibit G - Final Communication with Lee Parks the Mediator - Questions from Plaintiff still not addressed by Lee Parks).

**PREMISES CONSIDERED,** this Court should:

59. Deny Defendant's motion because Settlement Agreement does not include all essential terms of the parties understanding and Mr. Lewis' understanding that we would not be releasing IBM, law firm Jackson Lewis and law firm Kilpatrick for claims associated with wrongful and retaliatory action.

60. Find as a matter of law and fact that settlement memorandum does not memorialize the essential terms of the parties agreement because it does not make explicit that Mr. Lewis is not releasing IBM, Jackson Lewis and Kilpatrick for claims related to retaliatory actions, disparate treatment, and wrongful conduct, against Mr. Lewis including but not limited to leaking and publishing of Mr. Lewis' confidential EEOC charges and his attorney client communications;

61. Find as a matter of law that Mr. Parks' September 17, 2015 decision holding that the settlement agreement is not contrary to the settlement memorandum is void given that Mr. Parks' was Mr. Lewis' former attorney.

62. Find that if the Settlement Agreement as signed does not accurately and fully reflect the carve outs, attorney Mixon should not receive any contingency fee for withdrawing.

Respectfully submitted, this the 14th day of December, 2015.

FELTON EDWIN LEWIS, IV
7388 Ohara Court
Villa Rica, GA 30180

# CERTIFICATION

In accordance with Civil Local Rules 5.1C and 7.1D, I hereby certify that this

document has been prepared in 14 point, Times New Roman font.

_____

FELTON EDWIN LEWIS, IV

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| **FELTON EDWIN LEWIS, IV,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION** |
| | ) | **NO. 1:15-cv-00831-RWS-JSA** |
| **INTERNATIONAL BUSINESS** | ) | |
| **MACHINES CORPORATION,** | ) | |
| **MICHAEL TOWNSEND, RENEE** | ) | |
| **CUNNINGHAM, JOHN KOEPSEL,** | ) | |
| **and DAVID SANDERS,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**CERTIFICATE OF SERVICE**

I certify that on December 14, 2015, I served a copy of the foregoing **FELTON EDWIN LEWIS, IV RESPONSE TO MOTION TO ENFORCE SETTLEMENT AGREEMENT, and TO DISMISS THIS ACTION WITH PREJUDICE PURUANT TO FED. R. CIV. P. 12(b)(6), AND FOR SANCTIONS AGAINST PLAINTIFF** on the following parties by depositing a copy of the same in the U.S. Mail, postage prepaid, to the following:

**Justin R. Barnes**
JACKSON LEWIS P.C.
1155 Peachtree Street
Suite 1000
Atlanta, Georgia 30309-3600

**FELTON EDWIN LEWIS, IV**

## Exhibit A – 20130128 Skills for Growth IBM Agreement

January 28, 2013
Felton Lewis IV
7388 Ohara Court
Villa Rica, GA 30180

Dear Felton,

I am pleased to inform you that your request for a Skills for Growth Leave of Absence ("SfG LOA") has been approved. Your leave will begin on 02/08/13 and is planned to end on 02/08/14 with Bridge Solutions as Director of Sales. This leave is subject to the terms and conditions of this letter and its attachment.

Please review this letter and attachment in order to fully understand the specific terms and conditions of your leave. Here are the highlights of your leave provisions:

·  While on the SfG LOA, you will be eligible for similar benefit plans and programs as other regular employees taking a personal leave of absence.

·  IBM acknowledges your intended employment with Bridge Solutions during your leave of absence and further acknowledges that negotiation of all terms and conditions of your employment with Bridge Solutions will be directly between you and Bridge Solutions. You further acknowledge that IBM will exercise no control over your employment with Bridge Solutions.

·  During the SfG LOA, you are subject to the IBM Business Conduct Guidelines in effect on the date your leave begins. In addition, the agreement you signed upon hire regarding confidential information and intellectual property ("IP Agreement") continues in effect during and following your SfG LOA, pursuant to the terms of the IP Agreement.

·  Sixty (60) days prior to the end of your SfG LOA, you must notify your IBM Career Manager of your intent to return to IBM or to extend your leave period in accordance with IBM's personal leave of absence policy.

·  If you have agreed to return to work and do not return on the specified return date as agreed to by you and your Career Manager, you will be considered to have voluntarily resigned effective your last day worked prior to going on leave and all active benefits will cease.

·  In the event IBM or your business unit conducts an involuntary reduction in force of employees while you are on leave, IBM reserves the right, to the extent permitted by law, to terminate your leave and your employment in accordance with the terms of the reduction in force. In determining surplus, the criteria that would be applied in your case would be the same as applied to all other employees affected by the reduction.

## Exhibit A – 20130128 Skills for Growth IBM Agreement

Your IBM Career Manager will be Robert Hoey he will maintain appropriate contact with you during your leave period. He will also assist you in your search in finding a comparable position upon your return or a position that is considered to be the best match for you at that time.

If during your leave period there is any change in your personal information, you should notify your IBM Career Manager and the Employee Service Center (1-800-796-9876).

Attached is additional important information regarding the leave provisions highlighted above. Prior to your leave, you may wish to access the You and IBM web site (http://w3.ibm.com/hr/us) and read and print out any relevant leave information (i.e. benefits, service credit, and plans/programs eligibility, etc.) you may want to reference while on leave. If you have any questions regarding the terms and conditions of your leave, you may contact the IBM Employee Service Center (ESC) on 1-800-796-9876 on business days between 8:30 a.m. and 8:30 p.m. Eastern time, to speak to a service representative.

I wish you every success during your SfG LOA. If you have any questions concerning this letter, please do not hesitate to contact me. Please ensure that you keep in contact with your Career Manager during your leave period.

Sincerely,


Michael Townsend

## Exhibit B – 20131009 Acceptance of IBM Proposal

**From:** Katherine Beasley [mailto:oconnorkb@us.ibm.com]
**Sent:** Wednesday, October 09, 2013 9:52 AM
**To:** Greg Fidlon
**Subject:** RE: Felton E. Lewis, IV

Hi Greg,

Thanks for your note.  I apologize for missing your call, I had left the office just a moment before you called!  IBM agrees to the terms in your email, with the edits in red below:

Kaytie,

I just left you a voicemail.  Mr. Lewis accepts IBM's offer to participate in mediation of his employment-related claims, which we understand will not take place until after he is deposed in the JTV litigation, subject to the following conditions:

1.    We will endeavor to schedule the mediation within the next 30 days, but in all events, it shall occur prior to 11/30/13, subject to the availability of mediators.
2.    We will utilize Terrance Croft, ~~Lee Parks~~ or Adrienne Fechter as the mediator.  Agree to Terrance Croft or Adrienne Fechter, do not agree to Lee Parks.
3.    IBM agrees to pay all upfront costs (administrative fees, etc.) associated with the mediation.  Should the mediation result in a settlement, IBM will pay 100% of the mediator's fees.  Should the mediation not result in a settlement, Mr. Lewis will pay $500 of the mediator's fees and IBM will pay the remainder.  Agree provided that, if the mediation does not result in a settlement, the mediator will bill Mr. Lewis directly for $500 and will bill IBM directly for its portion of the fees.

Mr. Lewis will withdraw the termination of his representation by Kilpatrick Townsend & Stockton and participate in all deposition prep. meetings the Kilpatrick firm requires of him relating to the JTV case.

In the interest of time, I have already notified Joel Bush of Mr. Lewis' decision.

Please confirm via reply email that these terms are acceptable.  Also, please let me know if IBM has a preference on the mediator.

Katherine F. Beasley
Attorney
IBM Corporation
6710 Rockledge Dr.
Bethesda, MD
Office # 2A411
(301) 803-2232 (office)
248-568-3515 (cell)
beasleyk@us.ibm.com

PREPARED BY IBM ATTORNEY / PRIVILEGE REVIEW REQUIRED
This e-mail and its attachments, if any, may contain information that is private, confidential, or protected by attorney-client, solicitor-client or other privilege.  If you received this e-mail in error, please delete it from your system without copying it and notify me of the misdirection by reply e-mail.

**Exhibit C – 20150330 Response TO EEOC – Amended Retaliation Charges**

## Felton E. Lewis, IV v. IBM Corporation
## Amended Charge Number 410-2013-02429 to include Retaliation – 03/30/2015

March 30, 2015

Equal Employment Opportunity Commission

Deputy Director Graham:

Thank you for responding to my email correspondence to Director Bernice Williams-Kimbrough. Please advise when you are available to discuss the Commission's position and my Request for Reconsideration:

**WRT the FOIA request** – Can the Commission confirm how many responses the Respondent and their Representation provided the EEOC? There was only one (1) response document from Jackson Lewis In my copy of the charging file, and the rest of the files were my documents. The Jackson Lewis response referenced an earlier response from the Respondent which was not included in the copy of my charging file. The FOIA submission guidelines do not define what is privileged or non-privileged on The Freedom of Information Act website. It is important that the Commission share a LEGAL interpretation of what is considered "privileged" per my FOIA request submitted to the EEOC Director on 3/23/2015.

**WRT the Commission's Retaliation Investigation** – Was there sufficient evidence in the Commission's investigation to support a finding of retaliation? I raised the Retaliation concerns to the investigator and provided documentation in support of my claim. E.g. I was approved by IBM to enter into the Skills for Growth Program in 2012. I was approved by the Manager on January 28th, 2013 and received a leave of absence approval from IBM effective February 8th, 2013. I was wrongfully terminated after filing the EEOC charge on February 20th, 2013. My counsel requested Mr. Trey Pyle (Sr. Investigator) conduct a witness interview with the Charging Party in early 2014. No witness interviews were conducted with the Charging Party. No witness interviews of the Respondent were provided in the copy of the charging file.

- **Note:** The Retaliation Acts were documented and provided to the Commission in the intake file, the One Drive file, the amended claim, and were referenced before and after the EEOC Determination. Once my confidentiality was breached by the Respondent, I escalated the Retaliatory acts to the EEOC Director, the Regional Attorney, and the Enforcement Manager. A resource action was taken by my current employer due to the total disregard of the Respondent and their "Authorized Parties".

**WRT to rejecting what the Commission believe to be a just resolution** – Would the Commission expect me to sign off a conciliation or settlement agreement that actually reversed the EEOC's determination? Please confirm if the Commission and/or the EEOC Director reviewed the terms of the proposed agreement. If I had executed the settlement agreement that the Commission believes was a just resolution. I would have had to lie, perjure myself, repeal the Commission findings, and pay additional legal fees to remediate a breach that the Respondent created, not I.

**Exhibit C – 20150330 Response TO EEOC – Amended Retaliation Charges**

## Felton E. Lewis, IV v. IBM Corporation
## Amended Charge Number 410-2013-02429 to include Retaliation – 03/30/2015

- **Note:** The just offer and resolutions you referenced did not address the economic disparity of being wrongfully terminated. E.G. The disparity between my annual income and benefits at IBM in 2012 compared to the reduction in annual income and benefits at Bridge Solutions Group in 2013 and 2014. E.G. The disparity between my lost IBM retirement investment income and stock awards. E.G. Expenses and Consulting Fees I was never reimbursed by the Respondent.

The Determination letter dated 6/9/2014 (attached) references a framework for conciliation, but the key reference document was not included with my Determination letter. It states "A conciliation agreement containing the types of relief necessary to remedy the violation of the statue is included for your review." Please provide an exact copy of the Conciliation Agreement document that was never provided to the Charging Party, and confirm if the same exact copy was ever sent to the Respondent.

The Retaliatory Acts were outlined in the intake documentation I provided the Investigator, and expanded upon in the Amended claim should have provided a factual basis for the Commission to issue a determination on whether the Responded committed Retaliation. As new discoveries were uncovered regarding additional acts of Retaliation that were committed by the Respondent after filing the initial discrimination charge, I made it a point to share them with the Commission. Attorney Dawkins mentioned that in the file it indicated Retaliation was investigated, but for whatever reason the finding of Retaliation was never communicated in the EEOC Determination letter.

The EEOC's regulations provide, in pertinent part: *"A charge may be amended to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein. Such amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received." 29 C.F.R. § 1601.12(b).*

The U.S Supreme Court and the Eleventh Circuit have both held that, under such circumstances, the amended EEOC charge shall "relate back" to the date the original charge was filed for statute of limitations purposes. *See Edelman v. Lynchburg College*, 535 U.S. 106, 115-19 (2002); *Kelly v. The Dun & Bradstreet Corp.*, No. 11-10723, at 4 (11th Cir. Dec. 5, 2011). I have attached copies of these authorities for your convenience.

The amended Retaliation Claims are attached that "relate back" to the original charge, and I am amending the initial charge to include Retaliation. I am requesting that the Commission honor my Request for Reconsideration, and provide a Final Determination response from the Commission regarding the Acts of Retaliation that were identified by the Charging Party in the pages that follow.

I would like preserve my right to an appeal and the right to ask for a review of any Agency order or Administrative Judge decision. I appreciate the Commission and the time expended on my behalf. This final Determination on Retaliation is the last request I have from the EEOC Atlanta office. My sense is it will greatly reduce and eliminate the need for interrogatories request during discover, and depositions.

**Exhibit C – 20150330 Response TO EEOC – Amended Retaliation Charges**

**Felton E. Lewis, IV v. IBM Corporation**
**Amended Charge Number 410-2013-02429 to include Retaliation – 03/30/2015**

Regards,

Felton E. Lewis, IIII

THIS AMENDS THE INITIAL CHARGE FILED ON 2/20/2013 and amplifies the original and the amended charge filed on 12/24/2013 to include Retaliation.  Examples of retaliation were provided in the intake documentation.  Retaliation was not referenced in the EEOC determination letter issued on 6/9/2014. The Acts of Retaliation committed by IBM and its Authorized Parties (Kilpatrick and Townsend) were communicated with the EEOC Investigator, Regional Attorney, Enforcement Manager, and the EEOC Director. The EEOC response on 10/21/14 *"at this junction, there will be no further investigation of your case and no further review of any additional evidence by any individual within the EEOC Atlanta District Office"*- The EEOC thereby denied the opportunity the Charging Opportunity to add Retaliation, and technical defects, including the EEOC's failure to verify the charge.

The EEOC's regulations provide, in pertinent part: *"A charge may be amended to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein.  Such amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received." 29 C.F.R. § 1601.12(b).*  Here, the Charging Party's original charge alleged that he was discriminated against based on his race when IBM placed him on informal and formal performance improvement plans and offered him a separation package.  The amended charge "clarifies and amplifies" these allegations as not only Discriminatory but also Retaliatory, among other things, explaining in greater detail how Mr. Lewis suffered several Retaliation actions that his counterparts in sales did not.

The amended charge also alleges "additional acts which constitute unlawful employment practices growing out of the subject matter of the original charge."  Specifically, the Charging Party alleges that the Retaliation acts detailed in this amended charge denied of him employee rights and opportunities that were already approved by IBM.  Namely, the leave of absence had already begun on 2/8.

The U.S Supreme Court and the Eleventh Circuit have both held that, under such circumstances, the amended EEOC charge shall "relate back" to the date the original charge was filed for statute of limitations purposes.  *See Edelman v. Lynchburg College*, 535 U.S. 106,

**Exhibit C – 20150330 Response TO EEOC – Amended Retaliation Charges**


**Felton E. Lewis, IV v. IBM Corporation**
**Amended Charge Number 410-2013-02429 to include Retaliation – 03/30/2015**

115-19 (2002); *Kelly v. The Dun & Bradstreet Corp.*, No. 11-10723, at 4 (11th Cir. Dec. 5, 2011). I have attached copies of these authorities for your convenience.

This amended Retaliation claim not only amplifies the discrimination charge but amplifies and illustrate several examples of the Charging Party enduring a consistent pattern of Retaliation acts after filing his EEOC claim. EEOC and the OIC should investigate whether IBM and their Authorized parties committed a violation of federal law by not submitting the FOIA request, before exposing the Charging Party.

Exhibit D – 20150302 2nd Settlement Attempt - Rejecting General Release

**From:** Rob Reid [mailto:robreidattorney@gmail.com]
**Sent:** Monday, March 2, 2015 11:41 AM
**To:** WILLIAM BATTS William.batts@eeoc.gov
**Cc:** Felton Lewis IIII <felsouth@hotmail.com>
**Subject:** Fwd: FW: Felton Lewis Settlement Agreement

Mr. Batts,

Please see the communication below. We did not respond to their revisions because they based their response on their unsupported allegation that Mr. Lewis had agreed through EEOC conciliation to release any and all claims for $85,000. That understanding hinders the parties from reaching further terms on a settlement.

Thus, we still need to have the call to clarify that there was no settlement while in conciliation or communication where Mr. Lewis agreed to any settlement amount or a release of his litigation consulting fees.

**Exhibit D – 20150302 2nd Settlement Attempt - Rejecting General Release**

---------- Forwarded message ----------
From: **Barnes, Justin R. (Atlanta)** <BarnesJR@jacksonlewis.com>
Date: Mon, Mar 2, 2015 at 11:02 AM
Subject: FW: Felton Lewis Settlement Agreement
To: "Rob Reid (robreidattorney@gmail.com)" <robreidattorney@gmail.com>
Cc: "Gordon, David L. (Atlanta)" <GordonD@jacksonlewis.com>

Rob,

I spoke with William Batts this morning.  I explained to him that the parties were in the process of finalizing the terms of the settlement papers, and that I had sent you IBM's most recent revisions on January 6, but that we never heard back from you. Mr. Batts indicated that he was going to touch base with you and may want to still have a call with us.  I thought it might be helpful to forward you another copy of our January 6 communication.  Please let us know if you would like to discuss.

Thanks,

Justin

Justin R. Barnes
Jackson Lewis P.C.
404.586.1809 | Direct

## Exhibit D – 20150302 2nd Settlement Attempt - Rejecting General Release

**From:** Barnes, Justin R. (Atlanta)
**Sent:** Tuesday, January 06, 2015 12:04 PM

**To:** Rob Reid
**Cc:** Gordon, David L. (Atlanta)
**Subject:** RE: Felton Lewis Settlement Agreement

<u>**FOR SETTLEMENT PURPOSES ONLY**</u>

Mr. Reid,

We have received the notice of right to sue issued by the EEOC to Mr. Lewis. We are following up with you directly to finalize the terms of the settlement IBM reached with Mr. Lewis regarding his employment claims. We received your proposed comments to the settlement agreement, which were forwarded to us by Investigator Pyle at the EEOC. As you know, with the assistance of the EEOC, IBM and Mr. Lewis agreed to resolve any claims related to Mr. Lewis employment for $85,000. As part of the agreement, Mr. Lewis agreed to release "any and all claims he has or may have against IBM." With that in mind, our responses to your proposed changes to the draft agreement are as follows (by paragraph number):

-    Opening Paragraph: IBM cannot agree to this change. By accepting IBM's offer, Mr. Lewis agreed to release "any and all claims he has or may have against IBM."

-    Paragraph 2: IBM cannot agree to most of your proposed changes. Mr. Lewis has agreed to release any and all claims he has or may have against IBM, without limitation. In addition, this matter has nothing to do with the JTV litigation or any consulting agreement Lewis had with the Kilpatrick firm.

-    Paragraph 3: IBM will agree to make the deadline for payment 30 calendar days rather than 30 business days.

-    Paragraph 5: IBM cannot agree to your proposed changes to this paragraph. This matter has nothing to do with the JTV litigation or any consulting agreement Lewis had with the Kilpatrick firm. IBM also will not agree to ask the court in the JTV case – an unrelated proceeding - to seal any records. If Lewis wants to ask the court to seal certain records, he can do so pursuant to the procedures of the court, but IBM will not do so on his behalf. IBM will agree, however, to mutual confidentiality and has included such language in the attached version of the agreement.

**Exhibit D – 20150302 2nd Settlement Attempt - Rejecting General Release**

- Paragraph 7: IBM will agree to your proposed language, as slightly modified in the attached version.

- Paragraph 9: IBM will agree to your proposed language, as slightly modified in the attached version.

- Paragraph 10: We are not sure why you insist on this change, please explain.

- Paragraph 14: We are not sure why you insist on this change, please explain.

- Paragraph 16: As to subsection (a), we cannot agree to your proposed changes. As noted above, Lewis has agreed to resolve all claims against IBM, and the JTV litigation has nothing to do with this matter. As to the provision regarding retaliation, why does Mr. Lewis not want to include a representation regarding retaliation? Does he intend to bring a retaliation claim? We must insist on keeping this language in the agreement.

- Paragraph 17: We will agree to remove the cooperation clause.

- Paragraph 18 (Now paragraph 17 in the revised version): We removed the reference to the EEOC conciliation agreement as the EEOC has issued a notice of right to sue. IBM also will not agree to your proposed language regarding "any written or oral agreement (or promissory estoppel claim) in connection with Lewis's litigation consulting fees and expenses." As noted above, the JTV litigation has nothing to do with this matter.

A copy of a revised agreement incorporating our responses is attached. Please let us know if you have any questions.

Thanks,

Justin

Justin R. Barnes
Jackson Lewis P.C.
404.586.1809 | Direct

**Exhibit E - 20150709 Lewis vs IBM - Prep Planning Outline for Mediation
Prepared by Lewis for Mixon**

Lewis vs IBM | Mediation Prep Planning with Esq. Steve Mixon
Comments added by Felton Lewis, IIII

## HOW TO PREPARE YOUR CASE FOR MEDIATION

You have the most terrible nightmare...

You show up for trial in your underwear, completely unprepared to argue your case. The judge asks you a very pointed question, and if you give the wrong answer, your case is dead. You start to sweat because you don't even know the answer. All you can do is stammer and stutter until the embarrassment becomes too much and you run out of the courtroom in shame.

Many litigators have this nightmare before a big trial. It is a reminder that preparation is paramount. But do lawyers ever have the same nightmare about mediation?

In mediation, the best lawyers know that being fully prepared will give their case the best chance of success. Because mediation is just as much about timing, strategy, information gathering and client management as it is about negotiation, preparation takes time, research and effort.

Because mediation is not a "get out of trial free" card or a license to be lazy, below are some helpful "best practices" for preparing your case for an effective mediation.

## 1.) INFORMATION EXCHANGE

The first step in preparing your case for mediation is to exchange as much information as you can with the opposing party prior to mediation. Your goal is to make certain each party has enough information to make fully informed decisions regarding settlement. Because a large percentage of cases fail to settle due to crucial missing information, this is one of the most important elements of preparing your case.

Exchanging information with opposing counsel can cost time and money. If you are working within a budget, discuss with opposing counsel the idea of limiting discovery to what is absolutely necessary to facilitate settlement. Keep in mind that some cases benefit from extensive discovery, while others do well with more limited discovery. Know your case well enough to know which category into which yours fits.

One month prior to mediation, call opposing counsel and ask what information they still need in order to ensure a productive settlement discussion. Also consider sending a formal demand letter at this juncture, or if you're defense, ask for one from the plaintiff so you can work with your clients to formulate a well thought out response.

# Exhibit E - 20150709 Lewis vs IBM - Prep Planning Outline for Mediation Prepared by Lewis for Mixon

Lewis vs IBM | Mediation Prep Planning with Esq. Steve Mixon
Comments added by Felton Lewis, IIII

## 2.) FILE REVIEW

The best lawyers prepare for mediation with the same thoroughness that one prepares for trial. Although it can be demanding and time consuming, you must remember that very few cases actually make it to trial; thus, mediation may be your client's only "day in court."

Review your file from top to bottom, inside and out. Take time to reread contracts, medical records, deposition transcripts, key documents and interrogatory answers. Because it is impossible to remember all the important details, make notes as you review. Be sure to note every little victory, concession, evasion and retort, as well as any holes you find in your case. You can also use this time to write down what needs to be included in your mediation brief.

## 3.) CASE ANALYSIS

As you are reviewing your file, you should be analyzing the strengths and weaknesses of your case. Make a written list. Keep in mind that no case is perfect. You need to take the time to realistically identify and develop strategies to deal with potential problems.

Think of how to approach your strengths and weaknesses in the context of a negotiation. Doing this at least 30 days prior to mediation will give you time to research unclear case law, develop counter arguments, and work with your client to determine if further information is needed.

Also take the time to analyze the strengths and weaknesses of your opponent's case. Put yourself in opposing counsel's shoes and try to anticipate their moves, their defenses and weaknesses. Anticipate opposing counsel's arguments, and have answers and counter-arguments ready. Remember that forming persuasive answers to tough questions is more difficult under pressure at the table. If you have thoroughly analyzed your case, not much will surprise you or throw you off your game.

## 4.) ESTABLISH A RANGE FOR THE VALUE OF YOUR CASE

You can't negotiate a settlement if you don't understand the true value of your case. To do this, you must make an objective risk analysis and case valuation. First, perform jury verdict research. Compare your case to other similar cases. Discount outliers and be realistic about unknown variables, such as how your witnesses will perform under the pressure of cross examination or how well your facts support your cause of action. Second, perform a thorough risk analysis. Establish a protocol of how to change your evaluation based on each identified risk. Consider creating a list of the assumptions and calculations that underlie your value decision. This will be helpful as you begin negotiation. If risks are brought forth by opposing counsel, you will immediately know how to discount your demand or raise your offers based on those risks. Third, apply what you've learned above within your damages analysis. Come up

## Exhibit E - 20150709 Lewis vs IBM - Prep Planning Outline for Mediation Prepared by Lewis for Mixon

Lewis vs IBM | Mediation Prep Planning with Esq. Steve Mixon
Comments added by Felton Lewis, IIII

with a number you feel represents the overall damages of the case, and then discount backwards for liability, costs, present value and trial uncertainties, such as how your particular judge might apply the law, which facts are likely or unlikely to come in, how well the experts testify, how well the other side's lawyer tries the case and how the jury will react to your client's countenance.

Experienced lawyers know in their gut what their case is worth. They have years of experience from which to draw, but for lawyers just starting out, they might find it helpful to consult with a more seasoned attorney to develop a reasonable settlement value. For any lawyer, it is often helpful to get a second opinion on case valuation because sometimes it is hard to see the forest through the trees. Remember that as an advocate, you might have a more optimistic view of your client's damages than what is possible in reality.

To properly evaluate your case, you also need to determine your client's goals. Are they interested in "winning" or are they willing to compromise? Does your client need anything other than money, such as an apology or a letter of recommendation? These factors might not add directly to your monetary valuation, but their intrinsic value should not be ignored. For example, how much would your client be willing to give up in financial gain if she gets a letter of recommendation in return? You need to know.

Finally, you must determine the settlement value of your case versus its litigation value. These numbers may be vastly different, and will depend on many factors. Some factors to consider include the percentage or cost of your fee, expert costs, whether a CCP 998 might be proffered, and how desperate your client is for an immediate payout rather than waiting for trial. Often, a settlement value for $100,000 today is more than your client would get a year from now after a $200,000 jury verdict. Run the numbers so you can rely on hard facts, and make sure you have a gentle method of letting your client know about these realities.

## 5.) DEVELOP A NEGOTIATING PLAN

Once you understand how much your case is worth, you must develop a negotiation plan. To do this, determine what you could win on your "best day in court," as well as your "walk away" number. Your "best day in court" number represents what your case is worth "soaking wet." This is the best possible scenario your client might obtain. Your "walk away" number can only be determined by you and your client, and it should represent the number that makes your decision to settle or not to settle very easy. In other words, if you have to debate about whether to take the number on the table, it's probably a number you should seriously consider. If you don't even have to think about it, then it's an easy decision. The easy decision is the "walk away" number. In determining this number, be sure to factor in whether your client needs money now or can wait, whether the same number will net your client the same amount at trial and whether there are other costs to consider, such as any time your client might have to take off work for a lengthy trial or risks of a large judgment.

# Exhibit E - 20150709 Lewis vs IBM - Prep Planning Outline for Mediation Prepared by Lewis for Mixon

Lewis vs IBM | Mediation Prep Planning with Esq. Steve Mixon
Comments added by Felton Lewis, IIII

Make a plan for your negotiation. Leave yourself enough wiggle room for unexpected responses from opposing counsel, but be careful that your numbers are grounded in reality. One of the worst mistakes lawyers make in a negotiation is to ask for the moon when their clients are only entitled to a piece of cheese. Be sure you can justify your demands or offers, as this will earn you respect and credibility with both the mediator and opposing counsel.

Finally, don't back yourself into any corners. Negotiation is about compromise and problem solving. If you come out swinging, you might overplay your hand, leaving you little room to move. Remember that mediation is about compromise; but in compromising, many of the most successful negotiations end with every side walking away equally unhappy about what they gave up, but equally happy about what they accomplished.

## 6.) MEET WITH YOUR CLIENT AND REACH AGREEMENT ON YOUR GOAL.

Evaluating the case for a legal perspective is, of course, only half the battle. Equally important is determining what your client needs and wants. Meet early and often with your client to help make this determination, and make sure your client understands that mediation can be a creative process, allowing for creative solutions.

Check in with your client early and often about their needs, goals, thought and feelings. Determine whether they need anything other than the declared relief in the lawsuit. This will help with client control issues that tend to pop up later in the process.

Keep in mind that client control is a big reason mediations fail to result in settlement. Often, the client's lawyer failed to adequately prepare their client for the ups and downs of the negotiation process, or the lawyer over-evaluated the case from the outset. To prevent this, you should explain to your client the strengths and weaknesses of their cause of action before mediation. Educate them about how you evaluate the case and about how the legal process and the mediation process works – and how they are different. Include your client in developing the negotiating plan as much as you can. Working with your client before mediation to arrive at an agreement about how to resolve the lawsuit might prevent client control issues in the future.

## 7.) ENSURE ALL DECISION-MAKERS WILL BE PRESENT

When scheduling your mediation, ensure that all relevant decision-makers will be present. If scheduling the mediation months in advance, confirm with the decision-makers at 30 days, 14 days, and 7 days prior to the mediation. Use these confirmations as opportunities to exchange further information and any initial demands or offers. Don't waste time and money by not ensuring they'll be there.

## 8.) PREPARE A MEDIATION BRIEF

**Exhibit E - 20150709 Lewis vs IBM - Prep Planning Outline for Mediation Prepared by Lewis for Mixon**

Lewis vs IBM | Mediation Prep Planning with Esq. Steve Mixon
Comments added by Felton Lewis, IIII

Many mediators ask for briefs so they can hit the ground running and not waste valuable negotiation time getting up to speed. The act of writing the mediation brief itself will help you prepare for mediation.

Consider whether you want to submit a confidential brief to the mediator alone, or if it would be helpful to submit a brief to all parties. There are advantages to each. A confidential brief allows you to candidly discuss the strengths and weaknesses of your case with the mediator, who will need this information to determine how to best position your case for negotiation. On the other hand, a brief sent to all parties can quickly narrow down issues and present a starting point for negotiations, allowing all parties to start on the same page.

As you write your brief, be aware of your audience. A brief that calls the opposing party a liar and a cheat is not going to position your case for resolution; rather, it will inflame passion and cause the other side to dig into their position. However, a brief that succinctly and professionally outlines your cause of action and why you feel your client will prevail might diffuse an otherwise contentious situation. You can use your mediation brief as an opening salvo to commence negotiation, and if exchanged between parties, its tone may set the tone for the entire negotiation.

**9.) CALL THE MEDIATOR TO DISCUSS WHAT YOU CAN'T PUT IN A BRIEF.**

You never know what information might help the mediator settle the case. It is especially important to speak to the mediator prior to the mediation for this reason.

There is a lot you can't put in your brief. That doesn't mean it's not important information to give to your mediator. The week before the mediation, call you mediator and tell them everything they need to know about your client, your case, opposing counsel, the opposing client and their case, and your true concerns about how the mediation might or might not go. Let your mediator know about the intangibles. These are the currency with which the mediator will be able to work towards settlement. Remember that your mediator's purpose is to settle cases. The more information they have about the problems, the more likely they are to solve them.

Entire books could be written about preparing your case most effectively for mediation. Although the above steps seem simple and obvious, many lawyers fail to follow them, thinking mediation is a free pass from the hard work of trial. Remember that a successful mediation requires just as much preparation as trial, even if the preparation is wholly different.

I hope these simple tips position you and your case for success in your next mediation.

**Money to Pay the Taxes**

## Exhibit E - 20150709 Lewis vs IBM - Prep Planning Outline for Mediation
## Prepared by Lewis for Mixon

Lewis vs IBM | Mediation Prep Planning with Esq. Steve Mixon
Comments added by Felton Lewis, IIII

What caught my eye in *EEOC v. Radio Shack,* (D. Colo. # 10-cv-02365), was a supplemental award to help the fired employee pay his additional tax burden.  A jury found that Radio Shack unlawfully retaliated against its employee for his age discrimination complaint, awarding $187,706 in back pay.  The EEOC sought front pay in lieu of reinstatement plus money to offset the increased tax burden.  The judge agreed, awarding $199,470 for front pay plus $101,657 to compensate for taxes

## Exhibit F  - Issues Raised by Attorney Mixon to Mediator Lee Parks

**J. Stephen Mixon** <steve@mixon-law.com>                          Sep
                                                                    24

to Lee, me

Lee,

Mr. Lewis and I have discussed your letter, and we want to make the following points, and ask that you reconsider your decision.

1. We spent 6 hours in mediation and less than 30 minutes reviewing the memorandum agreement.  The mediation was regarding the EEOC claim of racial discrimination.  All claims were not even aired or discussed in mediation, thus all claims were not resolved in mediation, thus there can be no general release.  Once all issues and risks have been resolved, whether that be directly with Lee and the released parties, Jackson and Lewis, and Kilpatrick and Townsend, then the general release language will be accepted and signed.

2. The memorandum agreement refers to "claims above", but the claim is never stated in the memorandum, thus it is in an incomplete document.  The only claim the plaintiffs attorney and the mediator was prepped to discuss, was the EEOC claim of racial discrimination versus IBM.

3. Mr. Lewis has negotiated several multi million dollar deals for Sterling and IBM, and there is no cap on the number or round of revisions in a commercial negotiation.  He has experienced as many of 10 rounds of revisions in negotiating agreements.

4.  Mr. Lewis never agreed to waive his right to a trial if mediation failed.  Mediation has failed.

5. There are several risks that were introduced in the language proposed by Jackson Lewis in the settlement agreement. There are terms that Jackson Lewis agreed to in the prior settlement agreement that were altered, changed or omitted in the post mediation settlement agreement.

6. Mediation failed because the scope was never clearly established prior to all parties coming together, and all parties attempted to limit the discussion topics under review prior to mediation, than issue a general blanket release afterward.

For all the reasons outlined above, Mr. Lewis has indicated that he cannot sign or execute the agreement.  It is riddled with risks that has not been discussed or mitigated.

--
J. Stephen Mixon, Esq.
Millar and Mixon, LLC
1691 Phoenix Blvd., Suite 150
Atlanta, GA 30349
770-955-0100 (voice)
678-999-5039  (fax)

Confidentiality Notice: This e-mail is covered by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521 and is legally privileged.  The information contained in this e-mail is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, please destroy the email after advising by reply that you erroneously received this. The receipt by anyone other than the designated recipient does not waive the attorney-client privilege, nor will it constitute a waiver of the work-product doctrine.

**Exhibit G - Final Communication with Lee Parks**
**Questions from Plaintiff still not addressed by Lee Parks**

Sep
26

**Felton Lewis** <felton.lewis@gmail.com>
to Lee, Stephen

Lee,

Thank you Sir for mediating the racial discrimination EEOC matter, and preparing the mediation settlement or memorandum agreement.

I can not accept and retain all the risks that were transferred over, included, or reinserted back into the final settlement agreement.

I would like to suggest that we close out this conversation, by capturing and including your in-line reply, to each of the four items below:

1. Please share your understanding, as the mediator, regarding the general scope of the mediation?

Lee Parks Response:

2. Please share your understanding, as the mediator, of the specific "claims" that you were briefed by my counsel to address during the mediation?

Lee Parks Response:

3. Please help me understand, what specific "claims" you or your admin were referring to, or drawing reference to, in the mediation memorandum agreement?

Lee Parks Response:

4. The memorandum doc mentioned "claims" and "the above mentioned claims" but no claims were ever stated or mentioned at the beginning of the memorandum doc, or in the preamble header section.  Would you agree that the memorandum document lacks any references to the scope, and the claims?

Lee Parks Response:

May I suggest we calendar a hearing with the judge to put this case back on the docket?

I'm available on Monday for a call, and open to any alternatives to resolve all the remaining issues, and mitigate all the risks.

Regards
Felton